185975 Thomas R. Back, individually, and on behalf of others similarly situated, v. Chesapeake Appalachia LLC, et al., arguments not to exceed 15 minutes per side. Mr. Lee for the appellant. Good morning, Your Honors. Michael Lee for Thomas Back. This case arises from Chesapeake's systematic underpayment of royalties to Mr. Back and other Kentuckians for gas extracted from their lands. Chesapeake did this in two ways. First, it reported a price to Mr. Back and other Kentuckians that was a different price than Chesapeake had actually received for the sale of the gas. And second, it deducted fictitious and overstated expenses off of those royalty payments to arrive at a wrong number. The district court found that Mr. Back made to the operative complaint, Mr. Back's fraud claim and Mr. Back's accounting claim were well pled and that the case would continue. The court's error, its gravest error, was in dismissing the entirety of Mr. Back's complaint despite deciding that he had well pled claims based on a defense that Chesapeake, in three motions to dismiss, did not itself raise as a dispositive issue. I mean, but the court does have, you know, the court can do stuff like that, so we have to deal with the merits of this. Well, and I agree, Your Honor, and the merits of this show that the district court erroneously dismissed the case on the statute of frauds ground. What the court did at bottom is it held Mr. Back's complaint to a standard that the statute of frauds itself doesn't hold Mr. Back to. It was looking for something in the record that was a single document called a contract that encompassed all of the terms that said, we shall here and after pay you the following. What the district court ignored was that every item of correspondence exchanged between Chesapeake and Mr. Back for the entire time that they had a contractual relationship, a decade, purported to pay Mr. Back on the basis of the, quote, sales price received by the lessee, Chesapeake, and deduct from that actually incurred expenses from the gross royalty payment. The statute of frauds inquiry is not, can we find a single document that encompasses all the terms? It is, parties are allowed to contract in any manner they want to contract, and the statute's inquiry is, are there sufficient written documents that evidence the concrete material terms of that agreement? Well, let's look at the statements in this case. Over 10 years, Chesapeake sent Mr. Back statements that had lease numbers, well numbers, the county, the state, quote, legal, colon, section 13-I-79E, end quote, all of which information ties to specific parcels of land on which the well leases apply. Counselor, let me ask you one thing here. Even though you have some statements there, what about the argument that the statute of frauds would still apply against your client because of the absence of a plaintiff's signature on any, we don't have a document with, that you can't satisfy the statute of frauds? Well, Your Honor, the statute of frauds in this context requires the vendor to sign the documents, as I think Your Honor's alluding to, which would be Mr. Back in this instance. And it's simply not true that Mr. Back didn't sign the documents. Each month, Chesapeake issued a royalty statement detailing a gross price, the price which it had received, it claimed, less deductions, and attached to those royalty statements. Mr. Back, every single month for 10 years, signed that check and deposited into the bank. Where is the evidence in the record of the signed check? Well, to begin with, Your Honor, this case didn't proceed to discovery. So this was a 12B6 motion, and the question on 12B6, as the panel well knows, is are the allegations of Mr. Back plausible? And it is plausible, and Chesapeake does not contend in its motions to dismiss, in three motions to dismiss, that Mr. Back didn't deposit the money that it gave him every month for a copy of an endorsed check? No, Your Honor. The complaint didn't attach documents. I guess it wouldn't be part of your claim. It would be in rebuttal of a defense. I think that's right, Your Honor. Mr. Back's claim is that he had an agreement for sales price less reasonable deductions. Chesapeake, in fact, the way that their counsel described the claim below, didn't even disagree with that. They say that Mr. Back and other Kentucky the revenue from the gas wells. Well, revenue is money flowing in exchange for the sale of gas, not 12 cents times the gas extracted from the land, irrespective of what Chesapeake paid for it. And the statements, again, tell the real tale. Chesapeake represented every month that the money it was paying related to the sales price received. That is a quote directly out of every single one of the statements that they sent. That's interesting, because that's at odds with the 1954 lease, which is in the record, right? Because that refers to 12 cents per 1,000 cubic feet, just a fixed price, right? But it's true, Your Honor, that the ancient leases that Mr. Back's ancestors and Chesapeake's ancestors, frankly, signed was a different deal. Mr. Back doesn't allege that that deal is the deal that he had with Chesapeake. And in fact, it wasn't the deal that Mr. Back had with Chesapeake's predecessor companies. Mr. Back was always paid one-eighth of the sales price, or purportedly paid one-eighth of the sales price. Less deductions, whether it was Chesapeake paying or anyone else. Your view is the deal changed at some point from the fifties until when your client's getting these statements, correct? That's correct, Your Honor. What about Chesapeake's argument that, so that's a modification, correct? A modification or an entirely new deal. Either way, a new agreement was reached, a different agreement than what's encompassed in the 1940 lease. Do your pleadings take one position or the other as to modification versus altogether new deal? Our pleadings plead each an alternative. Okay. What about the argument that if it's a modification, there isn't any consideration for it? This idea that it was unconscionable or something and ergo, I don't know, that sounds a little shaky to me, but what do you think the consideration would have been? Well, I think that the certainty and mitigation of business risk that Chesapeake enjoyed by, or its predecessors. Remember, when Chesapeake started its relationship with Mr. Back, started its relationship to these leases, it continued doing what its predecessor companies had been doing, which is to pay an eighth of the sales price, less deductions. It's not the case that Chesapeake changed the deal during the previous performance. But I do think that the avoidance of litigation following a Kentucky Court of Appeals case, holding that flat rate 12 cent leases from 50, 60, 70 years ago were unconscionable under Kentucky law, is consideration. Mr. Back. I mean, for all you know, there could have been something analogous to a settlement agreement. There could be. It could have been a conversation that, hey, you know, this is really out of line with the law. It's not enforceable. There's an easy way and a hard way to change this 12 cents per whatever price, and they chose the amicable way. I agree, Your Honor, that it could be that. But again, that's an issue, if it is relevant to the dispute, an issue for discovery. And again, this case was... I know you've had discovery requests pending for like two years or something. That's correct. And, you know, I think to the extent that Chesapeake wants to make these arguments, those are fine merits arguments to make. But we're here on a motion to dismiss where the standard is plausibility, and Mr. Back submits that he easily surpasses that threshold inquiry. What about the indispensable parties business? I mean, why... I gather there are a couple of relatives or something who are receiving royalties pursuant to the same agreements. Let me just talk to him. The same agreement from... with the predecessor... the same agreement with Chesapeake? Well, Mr. Back's property is subject to a splitting agreement, and there are other people who take as a result of just... So but why aren't they indispensable? Wouldn't their rights potentially... If you're construing the contract in this case, or you're seeking to, you're seeking a construction of the contract, as you understand the agreement. Doesn't that affect the folks that are receiving royalties as, you know, a split from the same agreement? Well, you know, I would note that the cases that Chesapeake cites on this argument are cases in which the case at issue is seeking a modification of the contract. That's not what this case is about. Mr. Back's allegations are that he and Chesapeake had an agreement for an eighth of the sales price less... So that maybe they had a special arrangement at some point. Not so, Your Honor. I think what Mr. Back's allegations are, are that his agreement was the same as every other Kentuckian's agreement. And so the fact that it's pled as a class action, whether it's other people on the splitting agreement or other Kentuckians who also had these leases, and there are thousands of them, they can all be treated on the common questions and common issues as to whether the agreements for one-eighth less deductions were abided by by Chesapeake or not. And we think discovery will show that it's not an issue of Mr. Back and the people that he splits with had one agreement and somebody else had a different agreement. Discovery will show, we believe, that every single lease in Kentucky was treated by Chesapeake in exactly the same way. Purported sales price, less purported deductions. Is there some obligation, though, in your complaint that sets forth some facts that would tend to show you've complied with the Kentucky statute of frauds? I mean, the whole idea of the statute of frauds is if the contract's to last more than a year, and this is clearly one to last more than a year, you're supposed to have a writing signed by the party to be charged, which is your client. That's correct, Your Honor. And our pleading specifically lays out that royalty statements and checks issued over the entire relationship show the in response to the first amendment complaint that the royalty checks, this is paragraph 47 of that answer, that the royalty statements did contain sales price and deductions, right? Evidencing that, I mean, they understood what these royalty statements did and there is no correspondence and no allegation and Chesapeake did not argue below that the royalty statements alleged in the complaint failed the statute of frauds. The district court made up that back for a little. All right. May it please the court, Dan Donovan for Chesapeake. Let me start that there is a written oil and gas lease in this case. Okay, it has an integration clause, which the judge also found. I know we focused on statute of frauds, but in her ruling, she says, moreover, the lease contains a clause and states the integration clause. So we have a written lease with an integration clause that does not permit any different representations. It actually says, any other promises made by either the lessor or the lessee not contained in this lease are unauthorized and do not bind the parties. I guess, you know, the sort of question that is on everyone's mind is, okay, but so why do they pay according to these different terms for so many years? Sure. So. Actions speak louder than words from the 1950s, arguably, right? Well, no, because here is why, and I know you have had cases with Chesapeake, I know you have had the Poplar case. You get a computer coding, okay, it gets into the system. Most leases are not like Mr. Bax. They are, in fact, where you get a sales price, less deduction, just like Poplar Creek. So a coding error, oftentimes, this comes up in different states, so he gets this, but let's do the counterfactual. Let's assume we paid him 10 cents per MCF on these checks for 10 years. He probably would have heard from him. Well, I don't know, but the legal question is, does that change the lease when we have a lease that has an integration clause that is recorded in the county recorder's office that has an integration clause changed? We have to pay him 12 cents per MCF. I mean, this is extremely speculative. It's 12B6. You have many years of a sophisticated contracting party sending fairly precise statements to this plaintiff, at least on 12B6. Why isn't that some kind of evidence that the deal, in fact, changed at some point prior to all this behavior? Sure. I think there's three reasons. First is, like this court in Kentucky does, it enforces the plain language. I get that, believe me, but the point is it changed. They're alleging it changed. Integration clauses, plain language, et cetera. He's saying that deal is out. Look at their behavior. That's not what they're doing anymore. Well, but then it becomes, and remember, this was his fourth shot at a complaint, because they kept changing their theories. Okay. No, I understand, but I'm just saying Judge Caldwell, to get there, finally says, and she found on two grounds, statute of frauds and integration clause. She says, here's the lease. It has an integration clause. That's still the lease. And he doesn't allege you breached this. Number two, on statute of frauds. Right. He says there's a different deal. No, I know. And we're kind of talking past each other. But he doesn't allege that, Judge. What he says is, somehow, the checks that were sent pursuant to this lease somehow created a new deal. And this lease says it can't. And number two, this doesn't satisfy Suppose I don't buy that argument about the integration clause. Where do we go from there? Okay. So then we still have two, statute of frauds and consideration. So we have the statute of frauds. They didn't say it was ever signed in the complaint. It's not in the complaint. After the fourth try, it's not in the complaint. Is that something that a plaintiff, in every contract case where the agreement was signed more than a year or two before, is that something that the plaintiff must affirmatively allege in his complaint? You know, I've got a case with two big companies tomorrow, an insurance coverage thing. Does the insured lose on the pleadings if they didn't allege, and it's all in writing? Because I don't remember seeing that like over and over in these cases. So this case is somewhat unique, I will agree. But because there is a written lease, and even the case he cites, Phelps v. Ham, referring to Corbin, says, look, and I understand Well, is it something, in your view, is the compliance with the statute of frauds, we've got the requisite writings, is that something that a plaintiff in a contract case must put in his affirmative allegations in the complaint? Yes, they need to make that. What's the authority for that? Is there a rule? I mean, this is kind of at the heart of the matter, I guess. Well, sure, and I want to get at consideration is, I understand he wants to ignore this lease. He says there's a modified lease, or a new lease. So he needs to allege those elements, Judge. So offer, consideration, and acceptance. He doesn't allege any of that. He says at some time in the past. But consideration, Judge. He never alleges. Remember, we have a well. I don't remember seeing this all the time. But Judge, this is unique because we have a written, and I understand he doesn't want to talk about the written lease. He says there's a new one. I get that. And for pleading purposes. And I want to talk about the merits and not about what opposing counsel is thinking. So, I mean, is this, do you have authority that these things need to be, I mean, can you give us a case that these things need to be in the complaint? Well, the consideration would, Judge, in order to allege a contract that was breached. And that's why my third point, which I think is just the death knell, is there's no consideration. They don't even try to allege any consideration. There can't be. Because there is a lease. There is a well. It's producing. He's being paid. There was nothing ever done new. And I understand in the papers, he says, Chesapeake might have been concerned about these leases. We pay other leases, okay? We pay other leases at the flat rate. Why this one wasn't? But there's no consideration. Well, he was talking about, well, maybe the consideration was a Kentucky Court of Appeals case that said this is, these 12 cents per 1,000 cubic feet or whatever is unconscionable. Correct. But isn't it, he doesn't allege that in the complaint, number one. Number two, actually below, he didn't cite to you, but he cited Judge Caldwell, he admitted in a footnote that subsequent to that case, that was actually rejected in a case called Cliff v. RDP, which is 200 F sub 3rd 660. So there's no, I believe you have to plead the contract before you can plead the breach. We have a case, though. That's, I mean, that's what I'm asking. Well, not on this issue, Judge, because it's so bedrocked that there's no, right now, the only contract that we have, and I understand he's arguing a new one, is this one, that has an integration clause. He then says we have a new contract, which I understand. Which apparently your client was acting pursuant to for many years. It's not crazy. Well, no. Not crazy. Unless your client's in the business of giving money away. It's not crazy, as a practical matter, to infer that they reached, at some point, some predecessors reached a different agreement. It is, but there's no consideration alleged. There's, especially here, Judge, and you have these contracts all the time. Okay, but the consideration issue is different from the statute of frauds issue. Oh, I agree. They're two separate points. And so, I mean, if, I'm just thinking out loud, if he were to get by the statute of frauds and it goes back, there could be, I mean, I don't know, there could be discovery that sheds light on the reasons for this. I mean, they've been waiting two years for me to be waiting, but, you know, there might be some answers to what actually happened back then. You know, why is Chesapeake paying all this money? There's got to be a reason. There's got to be a reason. There's no coding, Judge. It's a computer system. That, I mean, for us, are you... I'm not offering that. Do you think we're going to rule on that kind of speculation in this case? No, I don't want you to. I'd ask the court to rule. I mean, these, they've been in front of us many times. They're pretty sophisticated. That one, for ten years, nobody notices they're overpaying everybody. Nobody complained. He complained when Chesapeake sold the interest. And, Judge, I want to come back. I'm not trying to speculate. I'm really not. I just... Yeah, go ahead. Before you go into that, you keep saying your counsel has an agreement, another agreement. I thought his position was that maybe he didn't have an actual written contract, but the other agreement, so-called, was the fact that he had billing statements and signed checks and documents that he was, he's saying, actually constitutes an agreement. Is that your understanding? Yeah, so he admitted below that there is a written agreement, okay? Admitted it? Yeah. If there's an agreement, he, seemingly, he would be the proponent of it. Well, no, because he doesn't like this agreement, because this is the agreement that says our only obligation is to pay 12 cents per MCF. So this is recorded in the County Recorder's Office. His argument is, and I understand it's alleged, that some new agreement sprang into existence at some point, based on the royalty statements. Okay, that's his argument. Judge Caldwell had two grounds, she found, to dismiss. One is statute of frauds. Second is the integration clause, and this is at page six, precludes some new agreement because it says you can't have a subsequent agreement that's not in writing, and it says in any future representations, can't bind the parties. Then I want to address the statute of frauds issue, which is, does this satisfy statute of frauds? You get these statements. There is no allegation, there's no signed copy, but more importantly. Well, why isn't the check adequate as the vendor's signature? Sure. As Corbin says in Felsenham, you have statute of frauds, I understand. There's cases, people can find one for everything. You have to look at the unique facts. Here we have a written lease, and number two, these checks actually say, they don't give a royalty formula. We would have to give the same information, because remember, it's 12 cents times MCF. These checks, as they do in all the cases I've seen, they give a lot of information. They don't provide the royalty provision. Do you dispute the formula that your opposing counsel recited, the formula? You know, revenue minus expenses. It appears that way, Judge. I have not dug into it. It does appear that this one. You haven't kind of sorted that out in the two years of this litigation? No, I said it does appear that way, but we've sold the code. I mean, basically for our purposes, they were performing according to that formula. He was getting paid a lot more than 12 cents per MCF. If this goes back, there's a counterclaim. His client's probably going to owe us money because of the integration clause. And going back to statute of frauds, nothing signed, it also refers to something. It says, when you call us to discuss this, give us your lease number. Okay? There's a lease number on this written lease that's recorded in the county recorder's office, not on some hypothetical lease that you would give a lease number. He has no writing of any of the provisions, which you have to look at, that are signed here. What's the royalty? Yes, you could do the math, I agree, and try to figure it out. Well, I mean, so. To get to the necessary and indispensable party, what about the free gas provision? Okay. Does that still exist? That is, his client gets $40,000 per year. Well, I mean, I wonder if the contract that you're holding actually arguably helps the plaintiff here. I mean, they're not somebody who's just coming in off the street and like, yeah, I had this deal and they haven't performed and so on. I mean, we know that there was an agreement in the first instance, and we know for purposes of 1286 that Chesapeake for whatever reason has started to perform in a different manner. That is reflected by a formula shown on statements that go out every month. He's accepting that payment as he signs the check each month, and so we know there was an agreement between these parties, and we have, so the question isn't whether there's an agreement. Yes. Okay? The question's not whether there's an agreement. The question is whether, simply whether the agreement is changed, and we have these documents that show that the parties are certainly acting like they did. I don't, I mean, why isn't that a statute? I mean, why doesn't that satisfy the statute of frauds pretty easily? Well, I don't think it does, because I come back to the first point, which is we have a written lease, and I believe Judge Caldwell, in also finding, was enforcing it, just like a lot of the leases that come before this Court. Well, but you're, yeah, okay. I mean, you think it hasn't changed, but there's an agreement, so why are we talking about the statute of frauds? Because, well, that was the alternative finding, because she also said it can change. That was her finding. It actually says right here at the last line of the lease, it's at the record 54 at page 526, it says there can't be any other representations and any other So that's step one. Step two, he argues that there's a statute, that there's this new contract. We don't believe it meets the statute of frauds. There's no signature. In other words, and you have to look at the context. These checks were coming pursuant to this lease. Then we get to the finished and considered. Why isn't the analysis, we've got an agreement, there's no question, we've got an original agreement, we've got some other stuff. But we've got an agreement. Now, whether there's a plausible breach might be a different matter. But, you know, that's a merits question as opposed to a statute of frauds question. But that's what the judge said. It's not plausible primarily because this is an interim. He admits we paid more than 12 cents per annum. So if this lease is the right lease, and the end of this lease says there can't be any other lease, then there's no claim. It's like a very typical contract 12b-6. He overlaid. This is a little different. He argues, or alleges in part, I believe, that there's a new contract. I understand. Yeah, that's his whole case. I know, but our first argument, Judge, that he conceded below, which kind of gets a little bit lost here, is that he waived that. He says, yeah, you're right. If the judge finds that this lease is still in effect, I lose. And the judge found that. The judge says this lease is still in effect because you can't change it because of the integration clause. She also found in the statute of frauds that this new agreement doesn't satisfy the statute of frauds. Then I want to just hit briefly, I know I have time, consideration. He doesn't allege anything and has offered you nothing this morning that's in his complaint that would be consideration for this modified agreement. He argued below it was modified. I know now he's saying it's new, but he said it's modified. There's no consideration alleged. And then the fourth point is the necessary and indispensable parties. This lease is in effect if there's three owners. The lease has to apply the same to all. Shouldn't the district court sort that one out on remand? I mean, you know that there are judgments the district court has to make in this regard. If we were to disagree with the statute of frauds, I mean, tell me if you think otherwise, that would seem like something that really the district court should make the judgment on. They could. I agree with that. And what I would is I believe, Judge, and I won't ask I know because I lost this. At page six, the judge's other finding, which happens all the time on contract cases, is this is the contract that's in effect, the 12 cents per MCF. Counsel admits that we paid more than 12 cents per MCF. That's the end of the case. If the case goes back, Judge, I would ask that there be a finding, or that the court be permitted to re-review all this, because I know it's been forth, is I still believe this is the lease in effect, regardless of anything else as the court found. On 12B6, I just don't know how to reconcile that idea with your client's behavior. I mean, I'm skeptical that this was a mistake for 10 years. I just, okay, I am. I mean, it's not my first rodeo with them or with commercial litigation. I'm extremely skeptical of that. And the idea that we have to kind of accept that as a matter of law on 12B6 and broom a case that's based on behavior to the contrary and documents, carefully prepared documents by Chesapeake that show a different arrangement. I mean, that's just... I'm not asking you, Judge, to believe the mistake at this point, because I agree that would be a discovery. My argument is more 12B6 based, which is simply this is the contract in effect. And I understand the argument, but this happens all the time when there's a integrated contract and someone's making something. Someone said this to me, someone said that to me, and a court just kind of enforces it and says, no, I'm going to dismiss this. That's the contract. So. Okay. Thank you, Your Honor. Thanks for your patience. Thank you, Your Honor. Several points in rebuttal. And, you know, I would pick up where Your Honor Judge Kethledge left off, which is the degree to which defendants, and this is obviously characteristic of defendants who want to avoid reaching the merits of the case, is to spin out hypotheticals about what might have happened and to argue things that aren't in the record without the advantage of any discovery to convince this panel to reach ultimate conclusions on liability or what was done or what was said without participating in the case at all. Now, in three motions to dismiss and in this appeal, Chesapeake has not and did not today answer the question of if the agreement with Mr. Back was to pay only 12 cents times the amount of gas extracted, why did it always do something different? Now, the lease that Mr. Donovan holds up for 12 cents also doesn't have any provision in it for deduction of expenses. But Chesapeake did that at every single moment it owned the leases as well, showing that it abandoned the 1940 and 1954 leases at some point. What point that was isn't really relevant. The point today is that for 10 years, Chesapeake in detailed statements did one thing. It issued royalty checks that it signed and that Mr. Back signed and cashed for one-eighth of a purported sales price, less purported expenses. Now, to the point of the pleadings, I would note firstly that the degree to which Chesapeake appears to be insisting on the granularity of a complaint I think goes beyond what Rule 8 or Rule 9 requires, since there is a fraud claim. And the fraud claim is pled with particularity and the district court found that to be the case. But I would point to at Record 51, this is the operative complaint, page ID number 493, paragraphs 30 and 31, Mr. Back specifically alleges that Chesapeake has publicly acknowledged that it's under subpoena from the Department of Justice, the U.S. Postal Service, and various state attorney generals seeking information on our royalty practices. That's a quote from Chesapeake's SEC statements. What does that have to do with anything here? Well, it is, it supports the idea that to Mr. Donovan's point that we didn't allege anything about the idea of consideration, that the reason why Chesapeake abandoned the ancient leases is because Kentucky case law held on the one hand you can take expenses, but on the other hand you have to pay sales price, right? Those are two Kentucky cases. Chesapeake wants this panel to accept the fact that, which it argued below, it relied on one line of Kentucky cases to abandon the leases so that it could take deductions, but we should ignore the idea that it followed the other line of Kentucky cases, that it cannot any longer pay 12 cent flat rate leases. It must pay the sales price. I don't have your complaint in front of me. What did you allege regarding sort of the history briefly of this lease? I mean, I presume you allege that there was that original agreement and then, what do you allege as specifically as you can recall about how it changed or how we got to where you think we are now? Well, in general, your honor, we allege that Mr. Back's ancestors began a relationship with Chesapeake's ancestors on the basis of a 1940 and then a 1954 lease, but that at all times that Mr. Chesapeake has been the counterparty to any agreement with any lessee for gas on the land, he has been paid something reflected in royalty statements received from Chesapeake and their predecessor companies, which is an eighth of the sales price. Ergo what regarding agreement between the parties? That the agreement was at all times to Mr. Chesapeake's understanding with both his predecessors and himself for an eighth of the sale price. Your complaint alleges no bridge specifically of how that came about. No, your honor, and I don't know that it's necessary for Mr. Back to prove or allege certainly how the agreement was changed. It is plausible that there was some kind of change given that Chesapeake's own conduct was completely contradictory to not only the 1954 leases, but to its arguments on this appeal. And by the way, Chesapeake did not argue this below. They didn't argue that they have a twelve cent flat rate lease that ends this for all time. They made different arguments. And again, in their footnote in one of the briefs, they concede, they state, Mr. Back and others are entitled to 12.5% of the revenue from the wells. Well, 12.5%, your honors, expressed as a fraction is one-eighth. And revenue isn't simply some academic market price that wasn't actually received. It might have been a mistake in that part of the brief. Well, this is the first time that Chesapeake has ever articulated that this was a mistake. But I certainly think that it is highly implausible that a sophisticated company... You would say it's Freudian. It's the likes of an own fault. I understand, your honor. Thank you. Thank you. Thank you. Thank you.